**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

POINT32HEALTH, INC.
1 Wellness Way
Canton, MA 02021

TUFTS ASSOCIATED HEALTH MAINTENANCE ORGANIZATION, INC.
1 Wellness Way
Canton, MA 02021,

Plaintiffs,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Hubert H. Humphrey Building
200 Independence Avenue, S.W.
Washington, D.C. 20201

CENTERS FOR MEDICARE & MEDICAID SERVICES
7500 Security Boulevard
Baltimore, MD 21244,

Defendants.

Civil Action No. 1:26-cv-3972

## COMPLAINT

Plaintiffs Point32Health, Inc. and Tufts Associated Health Maintenance Organization, Inc. (collectively, "Point32Health"), by and through their undersigned counsel, bring this Complaint seeking relief against Defendants the United States Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS") (together, "Defendants").

In support of this Complaint, Plaintiffs allege as follows:

## INTRODUCTION

1. CMS is responsible for administering Medicare Advantage ("MA"), also known as

Medicare Part C, through which private insurers provide Medicare benefits to their health plan members pursuant to contracts the insurers hold with the United States. Insurers holding those Medicare Advantage contracts are referred to as Medicare Advantage Organizations, or MAOs.

2. Annually, through its Star Ratings program, CMS evaluates the quality of MA contracts and assigns each contract a rating on a 1-to-5-star scale—a metric intended to signal coverage quality to beneficiaries. *See* 42 C.F.R. §§ 422.162(b), 422.166(h)(1)(ii), 423.182(b), 423.186(h)(1)(ii). These ratings carry significant reputational and financial importance to MAOs, making the program a cornerstone of MA for both plans and their members.

3. To calculate each contract's Star Rating, CMS is required to assess every MA contract against a uniform set of "measures" using a consistent methodology covering quality, operational compliance, pharmacy, and health outcomes/member experience. The resulting ratings are intended to serve two purposes: (1) indicate coverage quality to beneficiaries; and (2) determine certain funding for MAOs—in the form of rebate retentions and Quality Bonus Payments ("QBPs")—that CMS is obligated to provide in the year following the rating year (*i.e.*, the payments lag a year behind the ratings).

4. The financial impact of Star Ratings on an MAO is enormous. QBPs and rebate retention dollars directly fund MAOs' ability to expand member benefits, lower premiums, and invest in quality improvement, ultimately shaping the competitiveness and value of the MA products available to beneficiaries.

5. Point32Health brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, seeking to vacate CMS's calculation of the 2027 Star Ratings for two of its contracts. The 2027 Star Ratings were calculated using 10 measures (among others) that CMS implemented without undertaking the public notice-and-comment rulemaking required by 42

U.S.C. § 1395hh(a)(2).

6. Recently, in *Clover Insurance Co. v. U.S. Department of Health & Human Services*, No. 2:25-cv-142, 2026 WL 1483515 (S.D. Ga. May 27, 2026), the United States District Court for the Southern District of Georgia ruled that CMS's use of certain measures in calculating Star Ratings for 2026, including the 10 measures challenged in this complaint, was unlawful. The *Clover* court set aside the plaintiff's 2026 Star Ratings and ordered CMS to recalculate those ratings. CMS complied.

7. On October 8, 2026, CMS released the "2027 Star Ratings"; those ratings in turn will dictate 2028 rebate retentions and QBPs.

8. Notwithstanding the *Clover* decision, CMS relied on the same measures to calculate the 2027 Star Ratings. That is, it used those same measures for all MAOs but one: Clover. Even though the *Clover* decision and judgment were expressly limited to Clover's *2026 Star Rating*, CMS voluntarily excluded the equivalent measures struck down in that case when calculating Clover's *2027 Star Rating*. *No other* affected MAO received the same treatment.

9. Through the filing of this action, Point32Health seeks to vacate the 2027 Star Ratings it received for Contracts H2256 and H8330. In calculating those ratings, CMS utilized 10 measures (among others) that cause Point32Health injury and were adopted without the notice-and-comment rulemaking required by law.

10. Congress requires that any rule establishing or changing a substantive legal standard governing the payment for services under Medicare must be adopted through notice-and-comment rulemaking. *See* 42 U.S.C. § 1395hh(a)(2). And, by regulation, CMS is required to adopt new or substantively updated quality measures through notice-and-comment rulemaking. *See* 42 C.F.R. §§ 422.164(c)(2), 422.164(d).

11. The 10 measures challenged by this lawsuit come within the scope of those statutory and regulatory provisions and must therefore be set aside as procedurally improper.

12. The harm to Point32Health is not exclusively financial; lower ratings carry meaningful reputational harm. CMS publishes Star Ratings through its Plan Finder tool, directly influencing beneficiary enrollment and other consumer decisions. Even half-star movements can shape a plan's competitive positioning in the MA marketplace. By incorporating unlawful measures into the 2027 Star Ratings calculations, CMS improperly cast Point32Health's ratings in a poorer light in the eyes of Medicare Advantage consumers relative to peer MAOs that benefited from the unlawful measures.

13. This positioning in the MA marketplace is critical; MA contracts rated 4.0 stars or above can more easily offer enhanced benefits. Correcting the improper star ratings will enable Point32Health to expand member benefit offerings, reduce member premiums, and invest in quality improvement measures, which will in turn directly improve Point32Health's competitiveness in the MA marketplace.

14. Prior to initiating this action, Point32Health submitted a written request to CMS on October 1, 2026, asking CMS to remove the 10 measures challenged here for purposes of calculating its 2027 Star Ratings. CMS expressly denied Point32Health's request to calculate its 2027 Star Ratings in this manner by written response on October 7, 2026.

15. Point32Health now respectfully asks this Court to order CMS to recalculate its 2027 Star Ratings without regard to the 10 measures challenged by this Complaint.

## JURISDICTION, VENUE, AND EXHAUSTION

16. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action arises under the APA, 5 U.S.C. § 701 *et seq.*, and raises questions under the Medicare

statute, 42 U.S.C. § 1395 *et seq.*

17. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is an action against United States agencies.

18. On October 8, 2026, CMS published Point32Health's 2027 Star Ratings. That action constitutes final agency action for the 2027 Star Ratings.

19. No administrative process exists through which Point32Health may seek reconsideration of CMS's actions.

20. Point32Health has standing because it offers MA contracts whose 2027 Star Ratings were calculated using 10 measures that were adopted without regard to procedures required by law (namely, public notice and comment). Those unlawful measures impacted Point32Health's ratings, inflicting substantial economic and reputational harm and placing Point32Health at a competitive disadvantage in the MA marketplace.

21. As calculated, Point32Health's 2027 Star Ratings will cause it to realize approximately $41.4 million in lower or lost rebates and QBPs over the course of 2028.

## PARTIES

22. Point32Health, Inc. is a Massachusetts nonprofit corporation maintaining its principal place of business in Canton, Massachusetts.

23. Point32Health, Inc. offers health benefit products through its affiliate Tufts Associated Health Maintenance Organization, Inc. ("TAHMO"). Through the contracts that TAHMO holds with CMS, Point32Health, Inc. furnishes coverage to Medicare beneficiaries in the Commonwealth of Massachusetts under Parts C and D as follows:

- Contract H2256 provides HMO Medicare Advantage benefits. Point32Health, Inc. is the designated parent corporation under the MA program for this contract. Contract H2256

received a 2027 Star Rating of 4.0.

- Contract H8330 provides Medicare Advantage Dual-Eligible Special Needs benefits through TAHMO's Senior Care Option plan. Point32Health, Inc. is the designated parent corporation under the MA program for this contract. Contract H8330 received a 2027 Star Rating of 3.5.

24. Defendant HHS is a department of the Executive Branch of the United States government charged with overseeing the Medicare program. It is located in Washington, D.C. HHS has delegated its authority to administer the Medicare program to CMS. *See* 66 Fed. Reg. 35437-03 (June 5, 2001).

25. CMS is the HHS component agency primarily responsible for the administration and oversight of the Medicare program. Its headquarters are in Baltimore, Maryland.

## FACTUAL ALLEGATIONS

### I. Medicare Advantage

26. Medicare is a federal health insurance program established to serve Americans aged 65 and older, as well as qualifying individuals with disabilities. *See* 42 U.S.C. § 1395 *et seq.*

27. Medicare consists of four parts addressing distinct aspects of healthcare for its beneficiaries. Medicare Part A provides coverage for inpatient hospital stays, skilled nursing facilities, hospice care, and home health care. Medicare Part B provides coverage for outpatient care, physician visits, preventive services, home health care, and durable medical equipment. *See* 42 U.S.C. §§ 1395c through 1395i-6 (Part A); 42 U.S.C. §§ 1395j through 1395w-6 (Part B). Under Medicare Parts A and B—collectively referred to as "traditional" or "original" Medicare—the federal government serves as the insurer and directly reimburses providers for services rendered to enrolled beneficiaries.

28. As an alternative, a beneficiary may elect to enroll in Medicare Part C, known since 2003 as Medicare Advantage, in lieu of traditional Medicare. Congress established Medicare Part C through the Balanced Budget Act of 1997. *See* 42 U.S.C. § 1395w-21 *et seq.* Through the Medicare Advantage program, CMS contracts with private health insurers to furnish Medicare-covered benefits to enrolled beneficiaries, shifting the financial risk of benefit delivery away from the federal government and onto privately operated MAOs, which receive a fixed monthly payment for each enrolled member. *See* 42 U.S.C. § 1395w-23. That per-member, per-month payment must equal or exceed traditional Medicare spending per enrollee.

29. MAOs are required to furnish members with no less than the same level of benefits available under traditional Medicare. MAOs integrate coverage from both Parts A and B and frequently offer prescription drug coverage under Part D, which was enacted in 2003 and became effective in 2006 as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066 (2003). *See* 42 U.S.C. § 1395 *et seq.*

30. Among other programmatic reforms, the MMA established an annual bidding process. *See id.* § 1395w-23(a)(1)(B). Each year, MAOs submit a bid by the first Monday in June projecting the cost of delivering core Medicare benefits for the upcoming plan year, including overhead and profit. *See id.* If the bid falls below CMS's county-level benchmark, CMS refunds a portion of the savings to the MAO as a "rebate"—dollars the MAO may direct toward supplemental benefits, premium reductions, or both. *See id.* § 1395w-23(a)(1)(E).

## II. Star Ratings and their impact on MAOs

### A. Medicare Star Rating calculations

31. CMS began publishing annual performance ratings for stand-alone Medicare Prescription Drug Plans in 2007. In 2008, CMS "introduced and displayed the Star Ratings for Medicare Advantage Organizations . . . for both Part C only contracts . . . and Part C and D

contracts (MA-PDs). Each year since 2008, [CMS has] released the MA Star Ratings [subsequently adding] [a]n overall rating combining health and drug plan measures" in 2011. 83 Fed. Reg. 16440, 16520 (April 16, 2018).

32. In 2010, the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), introduced the Quality Bonus Payment program and adopted the Star Ratings system as its implementing mechanism.

33. Each contract's overall Star Rating is a composite score ranging from 1 to 5 stars, including half-stars, derived by evaluating the contract's performance on "measures" announced by CMS. Different measures carry different weight (assigned by CMS), and they combine to produce the contract's single summary rating. CMS publishes its Star Rating methodology in annual sub-regulatory guidance documents called "Technical Notes," which set forth the applicable measures and other key data used to assign measure-level scores. CMS revises these Technical Notes, and the measures they describe, outside of notice-and-comment rulemaking.

34. Because the overall Star Rating is a weighted average, performance on any single measure—particularly a heavily weighted one—can push a contract above or below a critical threshold. Contracts that reach the critical threshold score of 4.0 or better qualify for a QBP.

35. Thus, today, the Medicare "Star Ratings" program serves a dual purpose: it is CMS's main vehicle for publicizing MAO care quality and providing MA plan members with information to evaluate plan benefits and options, but it also embodies the financial incentive structure Congress designed to encourage quality-driven competition among MAOs.

**B. Rebate retentions and the Quality Bonus Payment**

36. Under the MA program, MAOs submit bids to CMS in early June of the year preceding the contract year (*e.g.*, bids for MA contract year 2028 will be due to CMS in June

2027). MAOs that bid below the applicable benchmark receive a "rebate" from CMS, which they may deploy to enhance benefits, reduce cost-sharing, or lower premiums.

37. How much of that rebate an MAO keeps depends directly on its Star Rating. Contracts rated below 3.5 stars (including unrated or new plans) retain 50% of the rebate amount, while contracts achieving a rating of at least 3.5 but below 4.5 stars retain 65%. Contracts attaining the highest tier of 4.5 stars or above retain the maximum 70% of the rebate, thereby rewarding higher-quality contracts with greater financial flexibility. This tiered structure means that a contract's Star Rating carries significant downstream consequences not only for its QBPs but also for its capacity to fund richer benefit designs and maintain competitiveness in the marketplace.

38. Pursuant to 42 U.S.C. § 1395w-23(o), CMS remits a QBP to MAOs whose contracts achieve a Star Rating of 4.0 or above. The QBP takes the form of an elevated benchmark—the maximum per-member amount CMS will pay—which in turn enables the MAO to offer enhanced supplemental benefits and return excess payments to enrollees as rebates.

39. For an MAO like Point32Health, the failure of CMS to properly calculate star ratings can result in substantial tangible injury. Half-star differences can and do result in tens of millions of dollars in lost annual rebates and bonus payments and reduced member benefits.

**C. The Medicare Advantage cycle**

40. An MA contract's Star Rating for a given year dictates its rebate retention and QBP, if any, for the following contract year. Those anticipated rebates and QBP are factored into the bids MAOs submit to CMS the preceding June.

41. Relevant to this case, the bids for the 2027 contracts were due to CMS in June 2026. CMS released the 2027 Star Ratings for Point32Health's (and all other MAO) contracts on October 8, 2026. Those 2027 Star Ratings dictate Point32Health's rebate retentions and QBP for use in

MA contract year 2028. The bids for the 2028 contracts are due to CMS in June 2027.

42. The following represents the schedule of key Medicare Star Ratings events:

| **2027 Star Ratings – Key Periods and Events** | |
|---|---|
| Calendar Year 2025 | Measurement period for the performance data that serve as a baseline for Point32Health's 2027 Star Ratings |
| June 1, 2026 | Statutory bid deadline for 2027, factoring in anticipated 2027 rebate retentions and QBP based on 2026 Star Ratings |
| Aug. 5, 2026 – Aug. 12, 2026 | Plan Preview 1 for 2027 Star Ratings |
| Sept. 8, 2026 – Sept. 15, 2026 | Plan Preview 2 for 2027 Star Ratings |
| Oct. 8, 2026 | 2027 Star Ratings Published |
| Oct. 15, 2026 | Annual Election Period commences |
| Jan. 1, 2027 | Medicare Advantage Open Enrollment commences |
| June 7, 2027 | Statutory bid deadline for 2028, factoring in anticipated 2028 rebate retentions and QBP based on 2027 Star Ratings |
| 2028 | QBPs stemming from 2027 Star Ratings paid |

## III. The *Clover* decision

43. On November 7, 2025, Clover Insurance Company filed suit in the United States District Court for the Southern District of Georgia challenging its 2026 Star Rating on the ground that CMS had unlawfully adopted certain measures used in its calculation. *See generally Clover Ins. Co.*, 2026 WL 1483515. In an order entered on May 27, 2026, the court agreed CMS committed legal error with respect to its reliance on 20 measures in calculating Clover's star rating

for 2026. Regarding 10 of those measures, the *Clover* court held that CMS exceeded its statutory authority because those 10 measures were based on data sources that CMS was not authorized by statute to consider. Regarding the other 10 measures, the *Clover* court held that they were procedurally invalid because CMS was required, but failed, to adopt them via notice-and-comment rulemaking. *Id*. at *25 (relying on 42 U.S.C. § 1395hh(a)(2) as the governing authority). Because CMS did not implement those measures through notice-and-comment rulemaking, it could not properly rely on them for purposes of calculating the 2026 Star Ratings.

44. That latter set of 10 measures is the identical set of measures challenged in this lawsuit. They are designated by CMS for 2027 as follows (equivalent 2026 designations are in brackets):

- C03 (Annual Flu Vaccine);
- C04 (Improving or Maintaining Physical Health);
- C05 (Improving or Maintaining Mental Health);
- C15 (Reducing the Risk of Falling);
- C16 (Improving Bladder Control);
- C21 (Getting Needed Care) [in 2026: C22];
- C22 (Getting Appointments and Care Quickly) [in 2026: C23];
- C23 (Customer Service) [in 2026: C24];
- C24 (Rating of Health Care Quality) [in 2026: C25];
- C26 (Care Coordination) [in 2026: C27].

45. The court vacated Clover's 2026 Star Rating and directed CMS to recalculate it consistent with its holdings.

46. CMS did not immediately appeal that decision nor seek a stay. To the contrary, within two weeks of the order, CMS complied by recalculating Clover's 2026 Star Rating as ordered by the court.

47. More than fifty days after the decision, on July 21, 2026, CMS filed a notice of appeal to the United States Court of Appeals for the Eleventh Circuit. *See Clover Ins. Co.*, No. 2:25-cv-00142 (S.D. Ga.), Notice of Appeal, ECF No. 67 (July 21, 2026). CMS subsequently

requested expedited briefing and a decision by spring 2027, which the court granted. *See Clover Ins. Co. v. DHHS*, No. 26-12553 (11th Cir.), Mot. to Restart or Set Briefing Schedule and to Expedite Oral Argument, ECF No. 13 (Aug. 19, 2026); *Clover Ins. Co. v. DHHS*, No. 26-12553 (11th Cir.), Order, ECF No. 15-1 (Sept. 2, 2026). Argument has been calendared for the week of January 18, 2027. *Clover Ins. Co. v. DHHS*, No. 26-12553 (11th Cir.), Revised Notice to Counsel, ECF No. 19 (Sept. 21, 2026).

## IV. Point32Health's Star Ratings

48. The 10 measures challenged here are unlawful as applied to Point32Health's 2027 Star Ratings for the same reason articulated by the *Clover* court: CMS was required but failed to adopt them via notice-and-comment rulemaking.

### A. Publication of 2027 Star Ratings in October 2026

49. On October 8, 2026, CMS published the 2027 Star Ratings. For Point32Health, CMS assigned overall 2027 Star Ratings of 4.0 stars to Contract H2256 and 3.5 stars to Contract H8330.

50. CMS published Point32Health's measure-level 2027 Star Ratings on its website, rendering both the overall and measure-specific ratings visible to Medicare beneficiaries, brokers, and the general public through the Plan Finder tool.

51. If the 2027 Star Ratings for each of these two contracts were recalculated by excluding the 10 measures challenged here (because they were adopted without the required notice-and-comment rulemaking), Point32Health projects that the contracts would have received overall 2027 Star Ratings as follows:

- H2256: 4.5 Stars
- H8330: 4.0 Stars

52. The financial consequence of CMS's action with respect to the 2027 Star Ratings is enormous, totaling approximately $41.4 million in lower or lost rebates and QBPs over the course of 2028. These are resources that Point32Health will direct toward supplemental benefits, premium reductions, and quality improvement activities for its members.

53. CMS's legal authority with respect to the Star Rating program was not broadened by Congress following the *Clover* decision; there has been no change that makes CMS's reliance on those same measures held unlawful in *Clover* any less unlawful for purposes of calculating the 2027 Star Ratings. Indeed, for Clover—but Clover alone—CMS voluntarily excluded the equivalent set of measures from its calculation of Clover's 2027 Star Rating. This, despite the fact that the *Clover* lawsuit, and *Clover* court's judgment, was limited to Clover's *2026 Star Rating*. By voluntarily excluding an equivalent set of measures from Clover's 2027 Star Rating, CMS implicitly conceded the legal infirmities identified in *Clover*. And yet, *no other MAO received this same beneficial treatment*.

**B. Reputational harm caused by the publication of Star Ratings based on unlawful measures**

54. CMS's publication of Star Ratings distorted by its inclusion of 10 unlawful measures has caused, and continues to cause, reputational harm to Point32Health. Star Ratings are publicly disclosed on CMS's Medicare Plan Finder tool, where current and prospective Medicare beneficiaries routinely consult them when making enrollment decisions. A depressed Star Rating can signal to members and to the market that an MAO's quality of care is substandard, regardless of whether that rating accurately reflects the MAO's actual performance. At the same time, because Star Ratings are relative, peer MAO ratings may be artificially inflated, further distorting how the Point32Health plans are perceived and casting them in a poorer light.

55. The reputational consequences of a below-threshold Star Rating extend beyond the

individual enrollment cycle. In particular, brokers and third-party marketing organizations that direct Medicare beneficiaries toward specific plans may deprioritize or decline to market plans rated below 4.0 stars, reducing Point32Health's visibility and competitiveness in the marketplace. Employers and plan sponsors that offer Medicare Advantage options to retirees may similarly rely on Star Ratings as a proxy for plan quality, and a suppressed rating diminishes Point32Health's ability to compete for and retain those relationships.

## CLAIM FOR RELIEF

### AGENCY ACTION TAKEN WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW—2027 STAR RATINGS (5 U.S.C. § 706(2)(D))

56. Plaintiffs incorporate by reference paragraphs 1-55 as though fully set forth herein.

57. Under 5 U.S.C. § 706(2)(D), an agency may not act without observance of procedure required by law.

58. Congress has mandated that CMS engage in notice-and-comment rulemaking and codify "by regulation" any "rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under [Medicare]." *Azar v. Allina Health Servs.*, 587 U.S. 566, 570 (2019) (quoting 42 U.S.C. § 1395hh(a)(2)).

59. Moreover, by its own regulation, CMS is obligated to adopt new quality measures through notice-and-comment rulemaking. *See* 42 C.F.R. § 422.164(c)(2) ("In advance of the measurement period, CMS will announce potential new measures and solicit feedback through the process described for changes in and adoption of payment and risk adjustment policies in section 1853(b) of the Act and then subsequently will propose and finalize new measures through

rulemaking.”). *See also id.* § 422.164(d)(2) (requiring notice-and-comment rulemaking for substantive updates to existing measures).

60. CMS failed to undertake the required notice-and-comment rulemaking and codify “by regulation” the following measures applied to Point32Health in calculating its 2027 Star Ratings: C03, C04, C05, C15, C16, C21, C22, C23, C24, and C26. Each of these measures establishes a substantive legal standard governing Point32Health’s QBP eligibility—and therefore governing “the payment for services” within the meaning of 42 U.S.C. § 1395hh(a)(2)—yet none was promulgated by regulation.

61. Because CMS calculated the 2027 Star Ratings for Contracts H2256 and H8330 using measures adopted without observance of procedure required by law (*i.e.*, notice and comment), the Court should vacate each of Point32Health’s unlawful 2027 Star Ratings for those two contracts and direct CMS to recalculate those Star Ratings without regard to these 10 measures.

## PRAYER FOR RELIEF

WHEREFORE, Point32Health respectfully requests that the Court enter judgment in its favor and:

a) Declare that CMS’s inclusion of measures C03, C04, C05, C15, C16, C21, C22, C23, C24, and C26 in calculating Point32Health’s 2027 Star Ratings was without observance of procedure required by law because CMS failed to adopt those measures through public notice and comment, as mandated by 42 U.S.C. § 1395hh(a)(2) and 42 C.F.R. § 422.164;

b) Vacate the 2027 Star Ratings of Contracts H2256 and H8330 and remand to CMS with instructions to recalculate the overall 2027 Star Rating for each of these contracts excluding the 10 unlawful measures identified in this Complaint;

c) Direct CMS to determine all 2028 QBPs and rebates consistent with the

recalculated 2027 Star Ratings for Point32Health;

d) Order CMS to permit Point32Health to revise any previously submitted MA bid(s) necessary to effectuate judgment, consistent with this Court's order, the recalculated Star Ratings, and the revised QBPs and rebates; and

e) Award Point32Health such other and further relief as the Court may deem just and proper, including costs and fees, as permitted by law.

*[Signature Page Follows]*

Dated: November 10, 2026

/s/ Daniel W. Wolff

Daniel W. Wolff
DWolff@crowell.com
D.C. Bar No. 486733
**Crowell & Moring LLP**
600 Fifth Street, N.W.
Washington, DC 20001
Telephone: (202) 624-2621

Steven D. Hamilton (*pro hac vice* forthcoming)
StevenHamilton@crowell.com
Illinois Bar No. 6289663
**Crowell & Moring LLP**
300 N. LaSalle Drive, Suite 2500
Chicago, IL 60654
Telephone: (312) 379-7615

*Counsel for Plaintiffs*